# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 30, 2002 Session

## LARRY E. PARRISH, ET AL. v. ROBERT S. MARQUIS, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-701-01     Dale C. Workman, Judge**

**FILED JUNE 8, 2004**

**No. E2004-00875-COA-RM-CV**

---

In this malicious prosecution case the Appellants, Larry E. Parrish and Larry E. Parrish, P.C., contend that the Knox County Circuit Court erred in granting motions for summary judgment filed by the Appellees, Robert S. Marquis and Ronald C. Koksal. We reverse the Circuit Court's judgment of dismissal as to Mr. Koksal and we affirm the Circuit Court's judgment of dismissal as to Mr. Marquis on alternative grounds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

HERSCHEL P. FRANKS, J., delivered the opinion of the court, in which Gary R. Wade, Sp. J., joined. HOUSTON M. GODDARD, P.J., did not participate.

John J. Mulrooney, Memphis, Tennessee, for the Appellants, Larry E. Parrish and Larry E. Parrish, P.C.

Deborah C. Stevens and Summer H. Stevens, Knoxville, Tennessee, for the Appellee, Ronald C. Koksal.

Frank Q. Vettori, Knoxville, Tennessee, for the Appellee, Robert S. Marquis.

## OPINION

In 1973 Lillie Mae Cain formed the Cain Partnership, Ltd. (hereinafter "the Partnership"). Ms. Cain's three daughters (hereinafter "the Cain sisters"), Jennie B. Cain Corum Miller (hereinafter "Ms. Miller"), Mary Hellen Cain Harkins, and Geneva Cain Anderson, participated as the limited partners. Project Development Corporation, an entity wholly owned by Oliver Smith, was named the general partner.

Upon formation of the Partnership, Ms. Cain executed a long term master lease pursuant to which she leased commercial real property, owned by her, to the Partnership at below market rates. The Partnership functioned to sub-lease this property to others for profit. Upon the death of Ms. Cain in 1973 the subject real property and the master lease became the corpus of a trust (hereinafter the "Trust") of which the Cain sisters were the primary beneficiaries.

After Ms. Cain's death the Cain sisters determined that Oliver Smith was not handling Partnership business to their satisfaction and, in 1982, they retained the Appellants, attorney Larry E. Parrish and Larry E. Parrish, P.C. (hereinafter referred to collectively as "Mr. Parrish"), to represent them in their capacity as limited partners of the Partnership and to assist them in terminating Oliver Smith's involvement with the Partnership.

In March of 1989, Mr. Parrish negotiated a settlement which ended Oliver Smith's involvement with the Partnership and, at the request of the Cain sisters, Mr. Parrish agreed to serve as counsel for, and president of, a new general partner of the Partnership designated General Partner of Cain, Inc. Additionally, in accordance with a plan formulated to increase revenue to the Partnership, the Cain sisters instructed Mr. Parrish to begin legal proceedings against tenants who had breached their leases with the Partnership.

By the latter part of 1990 the Partnership's resources were exceeded by the cost of funding the litigation being pursued by Mr. Parrish against defaulting tenants and, in August of that year, the Partnership and the Trust agreed that the master lease would be surrendered to the Trust no later than April of 1993, at which time the Partnership would effectively cease to exist.

Appellee Robert S. Marquis, who was employed by Ms. Miller as her personal attorney at all times pertinent hereto, attests that in the spring of 1993 "it became my opinion that Parrish had breached his fiduciary duty and had negligently handled litigation on behalf of Mrs. Miller." Mr. Marquis further attests that he advised Ms. Miller "that she had a potential cause of action, either individually or as a limited partner", and that he encouraged her to contact the Appellee, attorney Ronald C. Koksal, for advice in that regard. Ms. Miller then conferred with Mr. Koksal and retained him to represent her with regard to claims she might have against Mr. Parrish.

On July 6, 1993, Mr. Koksal filed a complaint on behalf of Ms. Miller in the Knox County Circuit Court. The complaint seeks damages for professional malpractice and names Mr. Parrish and General Partner of Cain, Inc. as defendants. The complaint asserts, *inter alia*, that, in March of 1982, Mr. Parrish entered into an attorney/client relationship with Ms. Miller, representing her "both in an individual capacity and as a limited partner of The Cain Partnership, Ltd." and that, in this capacity, Ms. Miller "placed reliance upon Parrish as to his advice and as to the actions taken by him." The complaint references the previously noted litigation undertaken by Mr. Parrish with respect to defaulting lessees and alleges that Mr. Parrish "did not advise regarding the scope, extent, and legal issues involved but instead, he began a course of cost-consuming and inefficient litigation." The complaint further charges that the defendants have caused Ms. Miller "loss of substantial monies" by reason of their breach of fiduciary duty to her, their negligent handling of legal matters, their

violation of the an implied duty of good faith and fair dealing, and their failure "to act as reasonably prudent persons within the meaning of the law and under the circumstances."

On July 30, 1996, the Circuit Court entered an order and adopted memorandum opinion as to the malpractice complaint granting motions to dismiss and/or for summary judgment filed by Mr. Parrish and General Partner of Cain, Inc. The memorandum opinion provides as follows:

> In summary the Court concludes that (1) plaintiff has standing to sue defendants in this case only as a limited partner asserting a derivative cause of action; (2) she has not stated a claim for which relief can be granted as a derivative action, and (3) any action against the Parrish defendants for legal malpractice is barred by the one year Statute of Limitations, TCA 28-3-104(a)(2).
>
> Therefore, defendants' Motions to Dismiss and/or for Summary Judgment are sustained at plaintiff's cost.

On July 15, 1997, Mr. Parrish filed a complaint in the Shelby County Circuit Court against Mr. Marquis and Mr. Koksal and their respective law firms asserting that the malpractice suit filed against him by Ms. Miller on July 6, 1993, constituted a malicious prosecution by reason of which Mr. Parrish sustained compensable damages. Thereafter, motions for summary judgment filed by Mr. Marquis and Mr. Koksal were granted by the Circuit Court and Mr. Parrish's complaint was dismissed. Upon appeal to our Court the judgment of the Circuit Court was affirmed, but on the alternative ground of improper venue. See, *Parrish v. Marquis*, No. W1999-02629-COA-R3-CV, 2000 Tenn. App. LEXIS 509 (Tenn. Ct. App. July 31, 2000).

On November 8, 2001, Mr. Parrish re-filed the complaint for malicious prosecution in the Knox County Circuit Court. The complaint alleges, *inter alia*, that Mr. Marquis and Mr. Koksal aided and abetted each other in filing the malpractice complaint and that they filed such complaint with malice. The complaint further alleges that Mr. Marquis and Mr. Koksal "failed to conduct a reasonable preprosecution investigation" and "lacked probable cause to believe that [Mr. Parrish] had engaged in legal malpractice against Ms. Miller."

Thereafter, Mr. Marquis filed a motion for summary judgment on the grounds that (1) he did not act without probable cause or with malice; (2) he was neither the attorney of record nor plaintiff in the malpractice suit; (3) the malpractice suit was not terminated in favor of Mr. Parrish; and (4) the malicious prosecution suit was not timely filed under the applicable statute of limitations. Mr. Koksal also filed a motion for summary judgment on the grounds that there had not been a favorable termination of the malpractice action and the malicious prosecution suit was barred by the applicable statute of limitations.

On April 12, 2002, the Circuit Court entered its order granting Mr. Koksal's motion for summary judgment upon the ground that the complaint against him was not re-filed within the time allotted under the one year saving statute set forth at Tenn. Code Ann. § 28-1-105. By separate

order entered April 18, 2002, Mr. Marquis's motion for summary judgment was granted on the same ground and upon the further grounds that Mr. Marquis "did not 'bring' the underlying cause of action since Attorney Ron Koksal represented the plaintiff in the underlying cause of action and any possible wrongdoing of Marquis would be barred by the doctrine of intervening cause due to the underlying plaintiff's representation by said Koksal." Both motions for summary judgment were overruled as to all other grounds asserted. Thereafter, Mr. Parrish filed notice of his appeal of these two orders.

As set forth in *Larry E. Parrish, et al. v. Robert S. Marquis, et al.,* No. E2002-01131-COA-CV, 2002 Tenn. App. LEXIS 918 (Tenn. Ct. App. December 30, 2002), *appl. perm. appeal granted* July 7, 2003, we affirmed the Circuit Court's holding that Mr. Parrish failed to re-file his suit for malicious prosecution within the time allowed under Tenn. Code Ann. § 28-1-105. However, upon further appeal to the Supreme Court our judgment was reversed and the case was remanded to us for consideration of issues which we had previously pretermitted. See *Parrish v. Marquis*, No. E2002-01131-SC-R11-CV, 2004 Tenn. LEXIS 250 (Tenn. March 19, 2004). Those issues, as restated, are as follows:

1) Did the dismissal of the malpractice suit against Mr. Parrish constitute a "favorable termination" such as is required in an action for malicious prosecution?

2) Did the complaint for malicious prosecution allege sufficient facts to support a finding that Mr. Marquis and Mr. Koksal conspired to file the malpractice suit?

3) Did the Circuit Court err in dismissing the complaint for malicious prosecution on the grounds that Mr. Marquis did not "bring" the malpractice suit and Mr. Koksal's representation of Ms. Miller in that suit relieved Mr. Marquis of liability for malicious prosecution under the doctrine of intervening cause?

4) Should Mr. Marquis's motion for summary judgment have been granted on the additional grounds that Mr. Marquis acted with probable cause and without malice?

In *Staples v. CBL & Associates, Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000) the Tennessee Supreme Court set forth the standard of review appropriate to summary judgments as follows:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d [423]at 426; *Byrd v. Hall,* 847 S.W.2d [208] at 210-211. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23,26 Tenn.1995).

Because a trial court's decision to grant a motion for summary judgment is solely a matter of law, it is not entitled to a presumption of correctness. See *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn.1995). In determining whether such a decision is correct we must review the record to determine if the requirements of Rule 56.04 of the Tennessee Rules of Civil Procedure have been satisfied in that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The first issue we address is whether the dismissal of the malpractice suit against Mr. Parrish constitutes a "favorable termination" such as is required to support an action for malicious prosecution.

In *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-248 (Tenn. 1992), the Supreme Court of this state noted as follows regarding elements necessary to an action for malicious prosecution:

> In order to establish the essential elements of malicious prosecution , a plaintiff must prove that (1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) *the prior action was finally terminated in plaintiff's favor*. (Emphasis added) (Citations omitted.)

As we have acknowledged, the Circuit Court's memorandum opinion, adopted by order entered July 3, 1996, dismisses the malpractice action against Mr. Parrish for two reasons - 1) because Ms. Miller did not have standing to sue Mr. Parrish other than in her capacity as a limited partner asserting a derivative cause of action and she did not sue in that capacity and 2) because the malpractice action was barred by the applicable statute of limitations. The opinion also sets forth the following findings of the Court:

> If plaintiff is suing the Parrish defendants for damages for some injury personal to her as a limited partner, then it is necessary, in the opinion of the Court, that plaintiff show that a relationship existed between her and the Parrish defendants such that those defendants owed her a duty which was breached to her detriment. Presumably in this case that relationship was one of attorney and client. However, the record shows that at all times material to this case the Parrish defendants represented the partnership, not the plaintiff. Furthermore, the record shows that at such times the plaintiff was represented by counsel of her own choosing, and there is no genuine issue of material fact about the absence of an attorney-client relationship between plaintiff and the Parrish defendants. Hence, if plaintiff's suit is a personal one, or opposed to a derivative action, the Parrish defendants' Motion for Summary Judgment is well taken on the ground that plaintiff has failed to state a claim on which relief can be granted.

Mr. Koksal contends that in order to qualify as a favorable termination for purposes of an action for malicious prosecution such termination must be on the merits in favor of the defendant in the prior suit - that it must reflect the defendant's non-responsibility for the misconduct charged. Mr. Marquis agrees, arguing that Tennessee case law provides "that unless there is an indication that the underlying defendant is not liable, there is no termination in favor of the plaintiff." Both Mr. Koksal and Mr. Marquis maintain that, based upon the grounds set forth by the Circuit Court in support of its dismissal of the underlying malpractice suit, such dismissal was not a favorable termination of the type that is required to sustain a malpractice action, but instead was a dismissal based on purely procedural grounds.

Mr. Parrish argues that any final termination in his favor which is not the result of a compromise satisfies the "favorable termination" element necessary to a malicious prosecution suit. In support of this argument he cites *Christian v. Lapidus,* 833 S.W.2d 71 (Tenn. 1992).

In *Christian* a complaint was filed in the district court charging the defendants in that action with violation of the Racketeer Influenced and Corrupt Organization (RICO) statutes. The complaint was subsequently amended and, as amended, no longer named, or contained allegations against, those particular defendants. Thereafter, the district court dismissed such defendants from the RICO action because the original suit against them was not prosecuted and because the amended complaint recited that it superseded the original complaint. The defendants then filed suit for malicious prosecution. The malicious prosecution suit, filed over one year after the amendment of the original complaint, was dismissed by the court as time barred under T.C.A. § 28-3-104(a)(1) which requires that an action for malicious prosecution be commenced within one year after the cause of action accrued. An action for malicious prosecution accrues when the underlying suit is finally terminated in the original defendant's favor.

The Supreme Court found that the legal effect of the amendment of the complaint was to remove the defendants from the suit and was an abandonment of the RICO action against them. The Court held that this abandonment constituted a final and favorable termination and, therefore, the cause of action for malicious prosecution accrued from the time of the amendment of the original complaint. In reaching this conclusion the Court discussed the "favorable termination" element essential to establishing an action for malicious prosecution as follows at page 74:

> The "favorable" component is required because a judgment in favor of the original plaintiff is conclusive of probable cause, unless procured by fraud. *See Sloan v. McCracken*, 75 Tenn. 626, 627 (1881). However, courts' definitions of "favorable" differ:
>
> > The first, and most rigid [approach], requires that the action have gone to judgment resulting in a verdict of acquittal, in the criminal context, or no liability, in the civil context. The second permits [an action for malicious prosecution] even if the underlying action was merely withdrawn so long as the plaintiff can demonstrate that the withdrawal

took place under circumstances creating an inference that the plaintiff was innocent, in the criminal context, or not liable, in the civil context. The third approach, while nominally adhering to the "favorable termination" requirement, in the sense that any outcome *other* than a finding of guilt or liability is favorable to the accused party, permits a malicious prosecution or vexatious suit action whenever the underlying proceeding was abandoned or withdrawn without consideration, that is, withdrawn without either a plea bargain or a settlement favoring the party originating the action.

*Delaurentis v. City of New Haven*, 220 Conn. 225, 250, 597 A.2d 807, 820 (1991) (emphasis in original) (footnotes omitted).

We reject the first approach, requiring a final judgment on the merits, because it permits a wrongdoer to escape liability for institution of a malicious prosecution simply by having the suit dismissed prior to trial. With regard to the second approach, requiring plaintiff to demonstrate an inference of innocence, we agree with the *DeLaurentis* court that this demonstration more properly relates to plaintiff's burden of proving absence of probable cause. *See id.* at 251, 597 A.2d at 820. Instead, we are persuaded, and now hold, that abandonment or withdrawal of an allegedly malicious prosecution is sufficient to establish a final and favorable termination so long as such abandonment or withdrawal was not accompanied by a compromise or settlement, or accomplished in order to refile the action in another forum. *Accord* Restatement (Second) of Torts §§ 674 comment j, 660 (1977).

We construe the Court's language in *Christian* to mean that establishment of the "favorable termination" element in an action for malicious prosecution does not demand that the underlying suit resulted either in a judgment on the merits in the plaintiff's favor or in an outcome which otherwise demonstrates the plaintiff's non-liability. The argument of Mr. Koksal and Mr. Marquis to the effect that the termination must reflect on the merits in a way that indicates the plaintiff's non-liability appears to have been rejected by the Court upon the rationale, in accordance with *DeLaurentis*, that the demonstration of an inference of innocence (or non-liability) "more properly relates to plaintiff's burden of proving absence of probable cause." Citing *Sloan*, the Court recognizes that, unless procured by fraud, a termination in favor of the original plaintiff would establish that there was probable cause for filing the underlying suit and, therefore, termination of the underlying suit must be in favor of the original defendant. Given this rationale for the "favorable termination" requirement, it is not necessary that such termination be a judgment on the merits in favor of the original defendant nor is it necessary that the termination demonstrate an inference of the original defendant's innocence or non-liability. In accord with our construction of *Christian*, so long as the outcome of the underlying suit constitutes a termination which was in favor of the original defendant *as opposed to the original plaintiff* and "was not accompanied by a compromise or settlement, or

accomplished in order to refile the action in another forum", *ibid* at page 74, it will suffice to support an action for malicious prosecution.

Mr. Koksal and Mr. Marquis cite three cases in support of their argument that in a malicious prosecution suit the underlying termination must indicate the non-liability of the original defendant - *Sewell v. Par Cable, Inc.*, 1988 Tenn. App. LEXIS 657, (Tenn. Ct. App. Oct. 26, 1988), *Spurlock v. Pioneer Credit Co.*, 1991 Tenn. App. LEXIS 249 (Tenn. Ct. App. April 11, 1991), *appl. perm. appeal denied Sept. 9, 1991*, and *Foshee v. Southern Finance and Thrift Corp.*, 967 S.W.2d 817 (Tenn. Ct. App. 1997). In light of our analysis of *Christian,* we do not deem these cases to be controlling authority to the extent that they advocate a definition of "favorable termination" which requires that the outcome of the underlying suit demonstrate the innocence or non-liability of the original defendant.

It is our determination that the Circuit Court's dismissal of the malpractice suit against Mr. Parrish and the Parrish firm is a "favorable termination" for purposes of the present action for malicious prosecution and argument to the contrary is without merit.

The remaining issues presented in this appeal pertain to the propriety of Mr. Marquis's inclusion as a defendant in the suit for malicious prosecution.

The first issue we address in this regard is raised by Mr. Marquis and queries whether the Circuit Court erred in holding that the complaint for malicious prosecution alleges sufficient facts to support the legal conclusion of conspiracy between Mr. Marquis and Mr. Koksal. We are somewhat perplexed by the fact that this issue is raised by Mr. Marquis. Furthermore, our review of the record does not show that the Circuit Court held that Mr. Parrish's complaint alleged insufficient facts to support the legal conclusion of conspiracy between Mr. Marquis and Mr. Koksal. The Court's order granting Mr. Marquis's motion for summary judgment and dismissing the malicious prosecution action as to him provides in pertinent part as follows:

> It is further ORDERED, ADJUDGED and DECREED that the Motion for Summary Judgment be and the same hereby is granted on the grounds that Robert S. Marquis did not "bring" the underlying cause of action since Attorney Ron Koksal represented the plaintiff in the underlying cause of action and any possible wrongdoing of Marquis would be barred by the doctrine of intervening cause due to the underlying plaintiff's representation by said Koksal; and upon the ground that the Court of Appeals decision in the original malicious prosecution case filed by plaintiff Parrish against Marquis and others was entered on July 31, 2000, more than one year before this suit was filed and therefore the one year saving statute contained in T.C.A. § 28-1-115 had expired before the filing of this case which occurred on November 8, 2001. The court overruled defendant Marquis' Motion on the other grounds contained therein.

There is nothing in this order which we construe to be a holding that the malicious complaint failed to allege sufficient facts to support charges of conspiracy. Although the matter of civil conspiracy was discussed at the hearing on Mr. Marquis's motion for summary judgment on March 28, 2002, we also find nothing in the Court's statements at that hearing which would constitute a holding that the malicious prosecution complaint failed to allege sufficient facts to support a conspiracy argument. Rather, it is our determination that the Court concluded that, under the intervening cause doctrine, Mr. Koksal's representation of Ms. Miller protected Mr. Marquis from suit for conspiring to engage in the malicious prosecution of Mr. Parrish. In reaching that conclusion the Court recognized that Mr. Marquis's motion for summary judgment was urged on three grounds - that there was not a favorable termination of the underlying case, that the malicious prosecution action is barred under the statute of limitations and that Mr. Marquis is protected under the intervening cause doctrine. We note the Court's comments with respect to the last of these as follows:

> Mr. Marquis relies upon the intervening cause or Mr. Koksal's duty to represent the client, review, become familiar with, before ever telling her to file the lawsuit, and that obviates any liability he has.

> The response from the plaintiff is different in that he says, Well, that may be true, but ... In this case Mr. Marquis was the original one to say that there was wrongdoing her, breach of fiduciary duty, and it's over litigating. Mr. Koksal said in the previous affidavit filed in the original <u>Parrish v. Marquis</u> filed in Shelby County, that he relied upon his opinion as to breach of fiduciary duty.

> Admittedly, there are situations where I think a party, a person, who may be an attorney, who is not an attorney of record in a case, may be conspired with or be so involved with a party who is a party of record in the case, that that attorney can be sued for that litigation.

> But I think that has nothing to do with them being an attorney. I think that has to be a civil conspiracy situation, and for that reason, *the Court would grant this motion on that ground, that there is an intervening cause*, and Mr. Marquis cannot be sued in this case in which he was not attorney of record. (emphasis added)

Having determined that the Circuit Court did not hold that the complaint for malicious prosecution failed to allege sufficient facts to support the legal conclusion of conspiracy we decline to address the issue of whether or not such a holding would have been proper.

The next issue presented for our review is whether the Circuit Court erred in dismissing the malicious prosecution suit as to Mr. Marquis upon the grounds that Mr. Marquis did not "bring" the underlying malpractice action and that Mr. Koksal's representation of Ms. Miller in the malpractice action protects Mr. Marquis from liability under the doctrine of intervening cause.

Mr. Marquis asserts that the Circuit Court's holding is proper because he did not "bring" the malpractice suit but merely referred Ms. Miller to Mr. Koksal for advice as to whether she did have a cause of action against Mr. Parrish, and then cooperated with Mr. Koksal's investigation which included discussing the facts of the case with Mr. Koksal and allowing him to review Ms. Miller's file. Mr. Marquis cites Black's Law Dictionary (6th Ed. 1991) for the proposition that "to bring an action or suit has a customary meaning at law, and refers to the initiation of legal proceedings in a suit." He further notes that under the Tennessee Rules of Civil Procedure civil actions are commenced by filing a complaint signed by the attorney of record who thereby certifies that to the best of his or her knowledge, information and belief, based upon reasonable inquiry, the claim asserted is warranted by law and supported by evidence. Mr. Marquis asserts that Mr. Koksal was Ms. Miller's attorney of record in initiating the malpractice suit and, therefore, he, not Mr. Marquis, bears responsibility for that suit. Mr. Marquis cites *Wykle v. Valley Fidelity Bank & Trust Company*, 658 S.W.2d 96 (Tenn. Ct. App. 1983), wherein we indicated that before one can be liable for malicious prosecution, one must do something more than merely give information. Mr. Marquis further notes that in *Wykle* at page 99 we cited with favor the Restatement of the Law of Torts, 383-384, Section 653 as follows:

> One who gives to a third person, whether public official or private person, information of another's supposed criminal conduct or even accuses such other thereof, causes the institution of such proceedings as are brought by the third person. The giving of the information, however, does not constitute a procurement of the proceedings which the third person initiates thereon if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit.

Mr. Marquis asserts that Mr. Koksal had the 'uncontrolled choice' of whether to bring the proceedings or not.

Mr. Parrish argues that the Circuit Court erred in applying the intervening cause doctrine in this case because malicious prosecution is an intentional tort and the intervening cause doctrine is only applicable to torts based on negligence. Mr. Parrish also argues that the fact that Mr. Marquis was not the attorney of record in the malpractice action does not relieve him of liability for malicious prosecution.

In *Waste Management, Inc. of Tennessee v. South Central Bell Telephone Company*, 15 S.W.3d 425, 432 (Tenn. Ct. App. 1997) we described the intervening cause doctrine as follows:

> The intervening cause doctrine is a common-law liability shifting device. It provides that a *negligent* actor will be relieved from liability when a new, independent and unforseen cause intervenes to produce a result that could not have been foreseen. The doctrine only applies when (1) the intervening act was sufficient by itself to cause the injury, (2) the intervening act was not reasonably

-10-

foreseeable by the negligent actor, and (3) the intervening act was not a normal response to the original negligent actor's conduct. The customary explanation of the doctrine is that an independent, intervening cause breaks the chain of legal causation between the original actor's conduct and the eventual injury. (citations omitted) (emphasis added).

It does not appear that the courts in our state have specifically addressed the issue of whether the intervening cause doctrine is applicable to an intentional tort. However, we note the Court's reference to "the *negligent* actor" in *Waste Management* and we further note that the Restatement of Torts, 2d §441(1) defines "intervening force" as "one which actively operates in producing harm to another after the actor's *negligent* act or omission has been committed." Also, as the Court recognizes in *Waste Management* the intervening cause doctrine operates to protect from unforseeable results. Am. Jur.2d Torts § 25, 624-625 provides:

> As to willful acts, persons may be held liable for the consequences that flow therefrom as a proximate cause, whether or not those consequences could have been foreseen or anticipated. In such cases, intervening causes are especially likely not to preclude liability of the wrongdoer.

We are inclined to conclude that the doctrine of intervening cause is not properly applied to an intentional tort such as malicious prosecution. However, we find alternative grounds for affirming the Circuit Court's dismissal of Mr. Parrish's complaint against Mr. Marquis as set forth hereinafter.

In support of his argument that Mr. Marquis is not relieved of liability merely by reason of the fact that he was not Ms. Miller's attorney of record in the malpractice case, Mr. Parrish cites *Mauldin v. Ball*, 58 S.W. 248 (Tenn. 1900).

In *Mauldin* a warrant was issued for the arrest of the plaintiff upon allegations that he had obtained money under false pretenses. The warrant was sworn out by an individual identified as "White." The action for malicious prosecution charged that the defendant procured White to commence and continue the prosecution of the plaintiff. On appeal our Supreme Court found that the trial court had erred in its instructions to the jury as follows at page 250:

> It is said that the court erred in charging the jury, in substance, that if they found that [the defendant] induced White to sue out the warrant, and was the moving spirit in the prosecution, and used White to protect himself, then he could be held to the same extent as White could, but, unless he was shown by the evidence to have been the moving cause of the prosecution, there could be no recovery against him. On the same feature of the case the court declined to charge, on request, that if [the defendant] actively ratified what White did, and aided and abetted in the prosecution, [the defendant] would be liable to the same extent as White for bringing such prosecution. We think the court erred in this feature, and that the

-11-

charge as given was incorrect, and the charge asked should have been given, and is an accurate exposition of the true rule in such cases.

Our construction of the Supreme Court's ruling in *Mauldin* compels us to the conclusion that, even if Mr. Marquis was not Ms. Miller's attorney of record in the malpractice suit and did not bring that suit against Mr. Parrish, he may yet be liable for malicious prosecution upon proof that he "ratified" the malpractice suit and "aided and abetted" Mr. Koksal in its prosecution. Although we find no evidence in the record from which a jury could reasonably conclude other than that, *vis a' vis* Mr. Marquis, Mr. Koksal had the uncontrolled choice, of whether to file the malpractice suit, summary judgment in favor of Mr. Marquis is still inappropriate unless there is also no evidence in the record from which a jury could reasonably conclude that Mr. Marquis ratified the suit and aided and abetted in its prosecution.

Mr. Parrish's argument that Mr. Marquis ratified the malpractice action and aided and abetted Mr. Koksal in its prosecution is based upon the following assertions:

1) "Marquis formed the opinion 'that Parrish had breached his fiduciary duty and had negligently handled litigation on behalf of Mrs. Miller,' and then advised Mrs. Miller of his opinion and encouraged her to pursue legal action against Parrish by referring her to Koksal for that purpose."

2) "It was the opinion of Marquis that was the basis of the prosecution of Parrish for legal malpractice."

3) "Marquis conferred, pre-prosecution, with Koksal, answering Koksal's questions regarding the legal malpractice claim against Parrish."

4) "Koksal prepared the complaint, which Marquis reviewed pre-filing for 'factual errors'."

5) "Marquis attended an in-court hearing [in the malpractice suit] with Koksal and 'conferred and consulted with Koksal' during his in-court presentation."

6) "After Parrish moved to dismiss the malpractice suit [on the ground that it was time barred under the statute of limitations], Marquis provided an affidavit, which Koksal filed, that was drafted to avoid the statute of limitations bar and the trial court rejected because it was 'contrary to extensive sworn testimony given by 'Mrs. Miller in Marquis' presence in Partnership proceedings."

Mr. Marquis's affidavit of July 20, 1995, is referenced as evidence supporting the first of the above assertions. The affidavit states that "it became [Marquis's] opinion that Parrish had breached his fiduciary duty and had negligently handled litigation on behalf of Mrs. Miller." However, the affidavit does not state that Mr. Marquis "encouraged [Ms. Miller] to pursue legal action", but only that he "advised Mrs. Miller that she had a *potential* cause of action, both individually and potentially as a limited partner, and encouraged her to contact Ronald C. Koksal *to advise her in that*

*regard.*" It is our determination that the only reasonable construction of these statements is that, based upon his opinion that Mr. Parrish breached his fiduciary duty and negligently handled litigation on behalf of Ms. Miller, Mr. Marquis concluded that Ms. Miller *might* have a cause of action (the cause of action was only "potential") against Mr. Parrish. By referring Ms. Miller to Mr. Koksal for advice as to whether, in Mr. Koksal's opinion, she in fact *did* have a cause of action, Mr. Marquis thereby absolved himself of responsibility for any decision as to whether Ms. Miller should file the malpractice suit.

Mr. Parrish's next assertion is that the "basis" of the malpractice lawsuit was Mr. Marquis's opinion regarding Mr. Parrish's alleged breach of fiduciary duty and negligent handling of litigation. The affidavit of Mr. Koksal signed on September 4, 1998, is offered in support of this assertion. We disagree that any statement made by Mr. Koksal in this affidavit constitutes evidence that the malpractice action was based upon the opinion of Mr. Marquis. We quote Mr. Koksal's affidavit in pertinent part as follows:

> 3. The underlying Knox County case, <u>Jennie B. Cain Carum Miller v. Larry E. Parrish, et al</u>, was referred to me by Robert Marquis, a Knoxville attorney. Mr. Marquis had represented Ms. Miller on various matters for a number of years. As stated in his affidavit filed in the underlying case, Mr. Marquis became aware and formed the opinion that Ms. Miller had a potential cause of action against the defendants in the underlying action, he so advised Ms. Miller, and he encouraged her to contact me in that regard. In fact, it was his opinion that Mr. Parrish had breached his fiduciary duty and had negligently handled litigation on behalf of Ms. Miller. A copy of that affidavit is attached hereto as Exhibit B.[1]

> 4. At the time the suit was initiated and at all times during its pendency, I believed in the existence of the facts upon which the claims were based and further believed that under those facts a claim could be valid under applicable law. I feel that belief was a reasonable one.

In support of his allegation that Mr. Marquis's opinion was the basis of the malpractice suit Mr. Parrish specifically references the statement that "[i]n fact, it was [Mr. Marquis's] opinion that Mr. Parrish had breached his fiduciary duty and had negligently handled litigation on behalf of Mrs. Miller." We do not agree that a jury could reasonably infer from Mr. Koksal's mere acknowledgment of this opinion that he filed the suit based upon it. In the very next paragraph Mr. Koksal states that it was his own belief that facts existed which supported a valid claim under the law. It is clear from Mr. Koksal's affidavit that his decision to commence the malpractice action was based upon his own assessment of the facts and not upon the opinion of Mr. Marquis. At most, Mr. Koksal's attestations regarding Mr. Marquis's opinion merely describe how Mr. Koksal came to be involved in the case and serve to confirm the validity of Mr. Koksal's conclusion by showing that another attorney separately arrived at an opinion consistent with such conclusion. We find nothing

_____

[1]The affidavit referred to is apparently Mr. Marquis's affidavit of July 20, 1995.

-13-

in this affidavit which could be reasonably interpreted as evidence that the malpractice action was commenced based upon the opinion of Mr. Marquis.

The third assertion of Mr. Parrish is that Mr. Marquis conferred with Mr. Koksal before the malpractice suit was prosecuted and that Mr. Marquis answered Mr. Koksal's questions regarding the malpractice claims. In support of this assertion Mr. Parrish references Mr. Marquis's November 3, 1998, response to interrogatories. The specific interrogatory and answer cited by Mr. Parrish provide as follows:

> **INTERROGATORY NO. 3:** Describe the factual investigation defendant performed before filing the Complaint in the Knox County lawsuit which led defendant to conclude that probable cause existed to believe that Larry E. Parrish, Larry E. Parrish, P.C., and General Partner of Cain, Inc. were liable on theories pled against them in that Complaint.

> **ANSWER:** I allowed Ron Koksal and one of his associates with the firm of Butler, Vines & Babb to review all of my files connected with the litigation involving Mr. Parrish. I also answered various questions (I recall that they were verbal rather than written) which Mr. Koksal had in investigating the matter.

There is nothing in this answer from which a jury could reasonably infer that Mr. Marquis ratified the filing of the malpractice suit or aided and abetted Mr. Koksal in its prosecution. The limited conclusion that a jury could reasonably draw from this evidence is that, prior to institution of the malpractice suit, Mr. Koksal conducted an investigation which included the review of information in possession of Mr. Marquis and that Mr. Marquis answered questions posed by Mr. Koksal.

The next assertion of Mr. Parrish - that Mr. Marquis reviewed the malpractice complaint for factual errors - also derives from Mr. Marquis's responses to interrogatories filed on November 3 1998:

> **INTERROGATORY NO. 9:** Identify each person who drafted the Complaint filed in the Knox County lawsuit.

> **ANSWER:** I believe that Ron Koksal and other members of the firm of Butler, Vine & Babb drafted the Complaint filed in the Knox County lawsuit. I was asked to review the Complaint to determine if I saw any factual errors contained in the Complaint.

It is to be expected that Mr. Marquis would be asked to verify the accuracy of facts stated in the complaint against Mr. Parrish given that he was Ms. Miller's attorney at times relevant to the claims in the complaint and, in that capacity was privy to Partnership transactions out of which the malpractice action arose. But it cannot be reasonably inferred from the mere fact that Mr. Marquis reviewed the complaint that he either ratified the malpractice suit or aided and abetted Mr. Koksal

-14-

in its prosecution. Furthermore, consistent with Mr. Parrish's position that the facts surrounding the allegations of malpractice supported a finding of non-liability, any correction of factual errors would have aided the defense, rather than the prosecution, of the malpractice suit.

The fifth of the above assertions - that Mr. Marquis appeared in court with Mr. Koksal and conferred with him during a hearing in the malpractice case - is based upon the following statement from the affidavit of Mr. Parrish filed March 22, 2002:

> When, in Miller v. Parrish, the Circuit Court heard oral argument on the motion to dismiss and for summary judgment filed by Parrish, Koksal appeared and presented the argument on behalf of Mrs. Miller; however, Marquis was in court, seated in the spectator section, intently observing and, from time to time, as the oral argument progressed, conferred and consulted with Koksal. Before the oral argument commenced, Koksal and Marquis sat together and talked, in the courtroom, awaiting the case to be called for argument.

Mr. Parrish's averment that Mr. Marquis was present at a hearing in the malpractice action and spoke with Mr. Koksal does not create a genuine issue of material fact with respect to whether Mr. Marquis ratified the malpractice action and aided and abetted in its prosecution. There is no indication in this proof as to the content of the conversations that Mr. Marquis and Mr. Koksal are alleged to have had. Any conclusions that the jury might draw as to the content of those conversations would necessarily be hypothetical and a controversy that involves a hypothetical or theoretical set of facts is not justiciable. *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186 (Tenn. 2000).

The final assertion offered by Mr. Parrish's firm in support of his claim that Mr. Marquis ratified the malpractice suit and aided and abetted in its prosecution is that Mr. Marquis provided an affidavit drafted to avoid the statute of limitations bar in the malpractice suit and such affidavit was subsequently rejected by the Circuit Court because it was contrary to prior testimony of Ms. Miller given in Mr. Marquis's presence. In support of this assertion Mr. Parrish references the previously noted affidavit of July 20, 1995, wherein Mr. Marquis attests that it was in spring of 1993 that he "first became aware and formed the opinion that Mrs. Miller had a potential cause of action." The following paragraph from Mr. Parrish's own affidavit of March 22, 2002, is referenced as additional supporting authority:

> Koksal filed a response to Affiant's motion to dismiss, including an Affidavit by Mrs. Miller, a true copy of which is attached as Exhibit 5 to what is Exhibit 11 hereto; and an Affidavit of Robert S. Marquis, a true copy of which is attached as Exhibit B to what is Exhibit 7 hereto. The affidavits of Mrs. Miller and Marquis were designed as an attempt to avoid the statute of limitations bar to Miller v. Parrish by swearing that Mrs. Miller and Marquis did not discover that Affiant had pursued the alleged cost-consuming and inefficient litigation in violation of the duties to the Partnership and Mrs. Miller until the Spring of 1993.

-15-

Finally, in support of this assertion, Mr. Parrish references a portion of the Circuit Court's memorandum opinion of July 16, 1996, wherein the Court addresses Ms. Miller's argument that she did not discover that she had a cause of action for malpractice until Spring of 1993 and that, therefore, the malpractice action, which was filed in July of 1993, was timely filed under the one year statute of limitations. The Court notes that in support of this argument Ms. Miller relies upon her own affidavit in which she attests that she had no idea that actions taken by Mr. Parrish "were not legally sound or in my best interest or in the best interest of the [P]artnership until Attorney Robert Marquis advised me in the Spring of 1993.". The Court also notes that Ms. Miller relies upon the noted attestation of Mr. Marquis that in spring of 1993 he advised the plaintiff that she had a potential cause of action against Mr. Parrish. The Court then states as follows:

> The difficulty with these affidavits is that they are in effect contrary to extensive sworn testimony given by plaintiff in other partnership proceedings prior to the filing of the instant case. In a deposition given by plaintiff on February 5, 1992, plaintiff testified at length about her displeasure with Mr. Parrish and the way he was handling partnership affairs. She particularly complained about the fact that Mr. Parrish had engaged in protracted litigation on behalf of the partnership without being successful, and the litigation was expensive, costing her "thousands of dollars". In that deposition she identified Mr. Marquis as her lawyer, and indicated that he was present with her in that proceeding.
>
> In the face of this prior sworn testimony it is the opinion of the Court that the affidavits filed by plaintiff do not create a genuine issue of material fact on the statute of limitations questions in this case. See Price v. Becker, 812 S.W.2d 597 (Tenn. App., 1991). While plaintiff may be in position to argue that she did not understand all of the legal ramifications of Parrish's legal activities on behalf of the partnership, she was obviously aware of the facts that she now says constituted a wrong on the part of the Parrish defendants.

Mr. Parrish contends that "the jury could reasonably infer from the fact that Marquis gave a false affidavit in an attempt to avoid dismissal of the malpractice suit that Marquis ratified bringing the underlying suit and actively assisted in continuing the prosecution."

The issue before the Circuit Court was whether Ms. Miller first became aware that she had a cause of action against Mr. Parrish for malpractice over one year prior to the filing of the malpractice complaint. In essence, the Court found that, as early as February of 1992, Ms. Miller was aware of facts that constituted the alleged wrongs for which she subsequently filed the malpractice suit and, therefore, she could not rely upon the affidavit of Mr. Marquis for the argument that she was not aware that she had a cause of action until spring of 1993. That is not to say, however, that Mr. Marquis's affidavit was false, but only that Ms. Miller's assertion that she did not become aware of the facts alleged in the complaint filed by her and Mr. Koksal until advised of them by Mr. Marquis. Ms. Miller's sworn deposition testimony which the Court referred to and found to be contrary "in effect" to the affidavits was that she was "displeased with Mr. Parrish and the way

-16-

he was handling partnership affairs" and that she complained about the fact that Mr. Parrish had engaged in protracted, unsuccessful litigation on behalf of the partnership which cost her 'thousands of dollars'. We do not agree that this testimony of Mrs. Miller is contrary to the attestation of Mr. Marquis that "he first became aware and formed the opinion that she had a potential cause of action in 1993." A contrary construction would require that we find that in 1992 when Ms. Miller complained about unsuccessful, expensive and protracted litigation Mr. Marquis necessarily simultaneously formed the opinion that she had a potential cause of action for legal malpractice. We do not agree that the Court intended that construction. Only Mr. Marquis knows when he formed his opinion regarding a potential legal claim against Mr. Parrish. The Court's findings are directed toward the veracity of Ms. Miller, not the veracity of Mr. Marquis. Because Mr. Parrish's argument is based upon the premise that the Court found Mr. Marquis's affidavit to be false we find such argument to be without merit.

Having determined that summary judgment in favor of Mr. Marquis is proper upon grounds that Mr. Parrish has failed to create a genuine issue of material fact as to whether Mr. Marquis ratified the malpractice suit and aided and abetted in its prosecution, we find it unnecessary to address the issue of whether Mr. Marquis's motion for summary judgment should have been granted upon the additional ground that the suit was filed with probable cause and without malice.

For the reasons stated herein we reverse the Circuit Court's order of April 12, 2002, to the extent that it grants summary judgment in favor of Mr. Koksal and we affirm the Circuit Court's order of April 19, 2002, to the extent that it grants summary judgment in favor of Mr. Marquis. We further remand for further proceedings consistent with this opinion. Costs of appeal are adjudged equally against Larry E. Parrish and Larry E. Parrish , P.C. and their surety and Ronald C. Koksal.

_____
HERSCHEL P. FRANKS, JUDGE